UNITED STATES DISTRICT COURT  Eastern District of Kentucky
EASTERN DISTRICT OF KENTUCKY  **F I L E D**
PIKEVILLE

AUG 1 5 2005

CIVIL ACTION NO. 04-352-GWU

AT PIKEVILLE
LESLIE G. WHITMER
CLERK, U.S. DISTRICT COURT

DENVER L. GOBLE, JR.,                                                    PLAINTIFF,

VS.                           **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                           DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled. If no, proceed to Step 2.
     See 20 CFR 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3. If no, the
     claimant is not disabled. See 20 CFR 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities? If yes, proceed to

1

Goble

Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

Goble

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Goble

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Goble

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Goble

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d

279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the

Commissioner's decision may be produced through reliance on this expert testimony

only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments.  Varley v. Secretary of Health and Human

Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Denver L. Goble, Jr., was found by an Administrative Law Judge

(ALJ) to have "severe" impairments consisting of neck and back pain.  (Tr. 13).

Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ

determined that Mr. Goble retained the residual functional capacity to perform a

significant number of jobs existing in the economy and, therefore, was not entitled

to benefits.  (Tr. 18-21).  The Appeals Council declined to review, and this action

followed.

At the second of two administrative hearings, the ALJ had asked the VE

whether a person of the plaintiff's age, education, and work experience could

perform any jobs assuming that he could lift 25 pounds occasionally and 15 pounds

frequently, and also had the following non-exertional impairments.  (Tr. 323).  He:

(1) could stand or walk approximately four hours in an eight-hour day (no more than

20 minutes without interruption); (2) could "very occasionally climb, balance, stoop,

7

Goble

crouch, kneel, or crawl;" (3) must avoid exposure to vibration; and (4) should have limited contact with the public. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 324).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff had filed prior applications for DIB and SSI, the most recent of which was denied at the initial level on May 5, 2000, and apparently not further pursued. The ALJ declined to reopen the prior applications. (Tr. 12). In his current applications for DIB and SSI, filed on December 30, 2002, the plaintiff alleged an onset date of November 21, 2002, when he stopped working. (Tr. 75, 334).

There is no question that the plaintiff has herniated discs in his lower back as well as in his cervical spine, confirmed by MRI examinations.

Dr. Panos Ignatiadis performed an L5-S1 diskectomy in December, 1999, after an MRI showed a large herniated disc. (Tr. 108). The plaintiff then returned to work. (Id.). The surgery reportedly helped Mr. Goble's symptoms significantly, but back discomfort gradually increased, and a new MRI of the lumbar spine in the summer of 2001 showed post-operative scarring. (Tr. 147, 167). An examination by a neurologist, Dr. Alexander Tikhtman, in December, 2001 showed a decreased

8

range of motion of the lumbar spine and tenderness, and decreased sensation in the left foot in the L5 dermatome, but EMG findings showed no acute denervation. (Tr. 146-7). However, Dr. Tikhtman felt that the physical examination was suggestive of L5-S1 nerve root dysfunction on the left with decreased ankle reflex and sensory findings. (Tr. 147). He suggested a pain clinic and epidural steroid injections.

Additionally, in November, 2002, Mr. Goble appeared at the office of his family physician, Dr. Lon Lafferty, with pain in his neck radiating into the left arm, along with some numbness and a burning sensation. (Tr. 157). An MRI of the cervical spine showed a herniated disc at the C7-T1 level causing mild canal stenosis, and another herniated disc at the C5-C6 level. (Tr. 156, 216-19). Dr. Lafferty referred his patient back to Dr. Ignatiadis, the neurosurgeon. Dr. Ignatiadis agreed that the MRI showed disc herniations at C5-C6 and C7-T1, but he found no motor, sensory, or reflex deficits, and advised physical therapy on the neck. (Tr. 215). On further visits, Dr. Ignatiadis again noted satisfactory strength and reflexes, but in April, 2003, signed a "certificate of medical necessity" stating that the plaintiff required an "electric bed." (Tr. 213-14). No functional restrictions are given, and there were no further visits.

Functional restrictions are given by two examining sources.

The ALJ based his functional capacity finding on the conclusions of Dr. Bobby J. Kidd, who examined Mr. Goble on one occasion in January, 2004, and who

Goble

apparently did not review any prior records. (Tr. 297-301).[1]  Dr. Kidd's physical

examination was largely normal, although he found a reduced grip on the left side,

positive straight leg raising, forward flexion of the lumbar spine limited to 65 degrees,

and decreased deep tendon reflexes of the left lower extremity. (Tr. 299-301).  Mr.

Goble could only squat halfway.  Dr. Kidd concluded that the plaintiff had the

residual functional capacity accepted by the ALJ and given in the hypothetical

question to the VE, supra.  (Tr. 302-4).

The ALJ rejected the September, 2003 residual functional capacity

conclusions of the plaintiff's treating family physician, Dr. Lon Lafferty, who had

limited Mr. Goble to lifting no more than 20 pounds occasionally, sitting and standing

10 minutes at a time, total sitting, standing, and walking of less than two hours in an

eight-hour day, and stooping no more than five percent of the time, among other

restrictions that would limit the plaintiff to less than full-time work.  (Tr. 288-92).

Subsequently, in December, 2003, Dr. Lafferty indicated that he had seen an overall

decline in Mr. Goble's functioning, and that he had considerable pain in his lower

back radiating to the hips.  The physician now felt his patient should lift no more than

10 pounds.  (Tr. 296).

---

[1]Kidd left blank that portion of the form indicating procedures (i.e., x-ray studies) had been reviewed.  (Tr. 301).

Goble

The plaintiff argues that it was error to reject the opinion of the treating physician. The Court agrees.

Dr. Lafferty not only treated the plaintiff at regular intervals since at least 1998 (e.g., Tr. 173), but also he was aware of all the MRI results from firsthand experience, and his office notes from late 2002 show objective findings of cervical radiculopathy, lumbar radiculopathy, muscle spasm, limited range of motion, and notations that the plaintiff appeared to be in "obvious distress" (e.g., Tr. 282-6). While the ALJ was not required to accept Dr. Lafferty's conclusory opinion that Mr. Goble was "disabled from gainful employment" (Tr. 296), the physician also gave specific functional restrictions. Dr. Kidd, by contrast, was a one-time examiner who did not have the benefit of any objective studies, or of a review of prior records. This is precisely the situation for which the so-called treating physician rule was designed. If the opinion of the treating physician is to be rejected, the opinion will have to come from a reviewer or examiner who had access to all of the evidence.

The decision will be remanded for further consideration.

This the ___/2___ day of August, 2005.

G. WIX UNTHANK
SENIOR JUDGE

11